**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**KASSANDRA S. HERSTGAARD,**

     **Plaintiff,**

**vs.**                                    **CASE NO. 1:07CV02-MP/AK**

**CHERRYDEN, LLC, et al.,**

     **Defendants.**

_____/


## REPORT AND RECOMMENDATION

This cause is before the Court on Defendants' motion and amended motion to dismiss. Docs. 79 & 93. Plaintiff has replied to both motions, Docs. 88 & 105, and Defendants have filed a reply. Doc. 106. These motions are therefore in a posture for decision. Having carefully considered the matter, the Court believes dismissal is not appropriate.

The Court has already set forth much of the background leading up to Defendants' motions in prior orders but believes a more thorough review of events and those orders is necessary.

Plaintiff filed this case on January 3, 2007, alleging employment discrimination. Doc. 1. At that time, Plaintiff resided within the Gainesville division of this Court. Shortly thereafter, the Court directed Plaintiff to provide it with service copies of the complaint. Doc. 9. Plaintiff

timely complied with the Court's instructions. Between the time Plaintiff filed the complaint and the Court's next order directing service, Doc. 16, Plaintiff submitted three changes of address to the Court, all of which were in Ruidoso, New Mexico. *See* Docs. 10, 12, & 14. On or about June 20, 2007, the Clerk issued the summonses and mailed them and the other documents to Plaintiff at the last known Ruidoso address.[1]

On July 2, 2007, the Court received a fourth change of address for Plaintiff, a post office box in Mescalero, New Mexico. Doc. 19. On that same day, the packet of documents mailed to Plaintiff's Ruidoso address was returned to the Court with a notation, "No longer at this address." Doc. 20. According to the Clerk's docket entry, the documents were immediately resent to Plaintiff at the Mescalero address. *Id*.

On August 30, 2007, the Clerk made another docket notation, documenting a telephone call with Plaintiff, who advised "there is a problem with the summons which have her old address." Doc. 22. The Clerk reissued the summonses, *id*., and Defendants were served on September 17, 2007. Docs. 23-25.

On October 8, 2007, Defendants moved to dismiss the complaint as untimely filed and for insufficient service of process. Doc. 27. The Court granted Plaintiff an extension of time to respond to a date beyond that requested to ensure she had sufficient time to comply, since at that time, the Court's orders were being provided to Plaintiff only via regular first class mail. Doc. 31. On October 25, 2007, Plaintiff faxed her response to the Court. Doc. 33. The Court granted

---

[1]This five-month delay is not attributable to Plaintiff.

Defendants leave to file a reply, Doc. 36, which Defendants filed on November 7, 2007.  Doc. 37.  The motion to dismiss was then placed in line for decision.

On April 1, 2008, the undersigned recommended that the motion to dismiss be denied. Doc. 38.  In the Report and Recommendation, the undersigned found that the complaint had been timely filed (though barely), and that Plaintiff should be given an additional opportunity to properly serve Defendants in the interest of justice.  *Id*.  Defendants did not object to the R&R, and on June 25, 2008, the district judge adopted the R&R and remanded the case to the undersigned for further proceedings.  Doc. 39.  On July 14, 2008, the Court granted Plaintiff an additional 30 days in which to serve Defendants.  Doc. 40.

Plaintiff served Defendants on July 28, 2008, Docs. 41-43, and Defendants timely answered.  Doc. 44.  On September 23, 2008, the Court issued its initial scheduling order, setting a joint report deadline of November 6, 2008.  Doc. 45.  On Plaintiff's unopposed motion, the Court granted an extension of the joint report deadline to December 1, 2008, based on the exhibits which showed the parties were discussing mediation.  Docs. 46 & 47.

Before the expiration of that deadline, Plaintiff moved for a second extension of time. Doc. 48.  The Court granted the second extension of the joint report deadline to February 2, 2009, again based on Plaintiff's representations that the parties were pursuing mediation.  Doc. 49.  At that time, however, the Court advised the parties that no further extensions of the consultation and joint report deadlines would be granted.  *Id.*

Approximately two weeks before the expiration of the deadline and despite the Court's explicit warning that no further extensions of the joint report deadline would be granted, Plaintiff filed a third motion for extension of the deadlines so that she could secure counsel.  Doc. 50.

The Court immediately denied the motion based on several factors, including the fact that Plaintiff had had more than sufficient time since the filing of the complaint (over two years earlier) to secure counsel and that she had not provided any evidence that she had made any efforts whatsoever to obtain counsel. Doc. 51. Two weeks later, Richard Bradford entered a notice of appearance as counsel for Plaintiff, Doc. 52, and the parties subsequently filed a timely joint report. Doc. 54. In the joint report, the parties set the mandatory initial disclosures deadline as February 16, 2009, and the discovery deadline as June 2, 2009. *Id.* On March 3, 2009, the Court adopted the joint report and because the parties had previously engaged in some settlement discussions, ordered them to mediation no later than June 16, 2009. Doc. 55.

Even before the Court's adoption of the joint report but after the deadline for initial disclosures had passed, counsel for Defendants, Danielle Urban, began asking Mr. Bradford to send her Plaintiff's disclosures. Doc. 57. During this same time period, she also began trying to secure a mutually convenient date on which to take Plaintiff's deposition and advised counsel that she was willing to conduct the deposition at a location closer to Plaintiff's New Mexico residence. *Id.* On March 19, 2009, Mr. Bradford e-mailed Ms. Urban Plaintiff's initial disclosures, stating, however, that he still needed to contact Plaintiff for a deposition date. *Id.* By this time, the initial disclosures were one month late.

On April 2, 2009, Mr. Bradford sent Plaintiff an e-mail, asking that she call him "because Defendants have been trying to contact me about scheduling your deposition." Doc. 59. At that time, he advised Plaintiff that although they were trying to reach a settlement with Defendants, "we still have to treat this as an active case." *Id.* The following day, April 3, 2009, Ms. Urban sent Mr. Bradford a letter, enclosing Defendants' first set of discovery requests and "follow[ing]

up on the status of Ms. Herstgaard's initial disclosures, which were served incomplete and unsigned." Doc. 57. She also renewed her request for a mutually convenient deposition date and suggested a date in May or early June. *Id.* According to Plaintiff, Mr. Bradford forwarded these documents to her on or about April 3, 2009, but he "did not explain what the documents were nor offer any assistance in attempting to answer the requests–he just sent them to me to figure out on my own." Doc. 59. It cannot be disputed, however, that she received them no later than April 27, 2009, since on that date, Mr. Bradford sent Plaintiff an e-mail, advising her of the status of "discovery issues" he had been discussing with Ms. Urban and attaching Defendants' discovery requests. *Id.* In this e-mail he informed Plaintiff that Ms. Urban had proposed taking her deposition in Albuquerque, New Mexico, on May 18, 2009, and told her to "[l]et me know if that is acceptable to you." *Id.* He cautioned Plaintiff that if these arrangements were not acceptable, Ms. Urban would schedule the deposition in Gainesville, Florida, and leave it to "you and me to argue to the judge why that would be impossible." *Id.* He also advised Plaintiff of Defendants' settlement counter-offer and specifically told her that she should review Defendants' discovery requests and send him "an initial draft of your responses by Friday [May 1, 2009]." *Id.*

On April 30, 2009, Defendants noticed Plaintiff's deposition for May 18, 2009, in Ruidoso, New Mexico, Plaintiff's last known place of residence. Doc. 57. Plaintiff acknowledges that she received the notice on or about May 5, 2009. Doc. 59.

On May 8, 2009,[2] Mr. Bradford sent Plaintiff an e-mail telling her that he needed a physical address for two of her proposed trial witnesses so that Ms. Urban could take their depositions. *Id*. He reminded her: "We also need to answer the interrogatories, respond to the document requests, and confirm that you will be present for the deposition on May 18." *Id*. He concluded the e-mail with a request that Plaintiff "call [him] as soon as possible." *Id*. Later that same day, he sent Ms. Urban an e-mail, advising her: "I did not get additional information from Ms. Herstgaard regarding the availability of the [Reverend] DancingBEAR Eldridge-Comanche and Brenda Pascotto, but she did present a counter-offer to your settlement/offer of judgment." *Id*. Ms. Urban responded that she would pass Plaintiff's counter-offer on to Defendants and reminded Mr. Bradford:

> In the meantime, it is imperative that you confirm your client's presence at her deposition on May 18. Also, since you have spoken with her, I find it inexplicable that we still do not have service information for her witness depositions....Your client's lack of cooperativeness is causing [Defendants] to expend unnecessary amounts of money and time in attempting to defend itself....[Defendants are] going out of [their] way to accommodate your client's claimed indigency, [have] been very [patient] with her lack of responsiveness and other dilatory tactics, and her utter lack of cooperation is completely unacceptable. Please advise whether she will attend her deposition, and please provide service information on her witnesses without further delay.

*Id*.

_____

[2]Defendants claim that Ms. Urban conferred with Mr. Bradford on May 7, 2009, as well regarding Plaintiff's failure to respond to discovery, but neither they nor Plaintiff has provided documentation of theses communications. According to Defendants, part of the communications included an agreement by them to extend the deadline for Plaintiff's discovery responses to May 15, 2009, the last business day before Plaintiff's deposition. Doc. 57.

In response, Mr. Bradford indicated to Ms. Urban that he too was having difficulty contacting Plaintiff's proposed witnesses but stated he would cooperate in securing their depositions past the discovery deadline if necessary. *Id*.

On May 11, 2009, Ms. Urban sent Mr. Bradford another e-mail asking again that he confirm Plaintiff's attendance at the upcoming deposition. On that same day, Mr. Bradford sent Plaintiff an e-mail:

> I just left a voicemail regarding your deposition scheduled for next Monday. Please respond to me today so that I may respond to Danielle Urban. Ms. Urban is traveling to New Mexico to take your deposition and she needs to make sure that you will appear as scheduled....
>
> Also I need to have a response to the discovery that I discussed with you last week.

*Id*. In response, Plaintiff sent Mr. Bradford an email, advising him that she had understood from his e-mails that she "had 21 days to decide if I wanted to accept the offer from [Defendants] and also...to let you know when I am available for a deposition." *Id*. She stated: "I spoke with you and told you I would get back with you regarding all of these issues." *Id*. Plaintiff questioned counsel's defense of her, accusing him of collusion with Defendants and demanding that he explain himself, and stated, "[A]t no time did I say I would consent to May 18th, 2009, for a deposition...in Ruidoso, New Mexico. I will not consent to a deposition in Ruidoso, New Mexico." *Id*. She advised him, however, that she would agree to be deposed in El Paso, Texas, on May 28, 2009, "only." *Id*. She did not address Mr. Bradford's reminder regarding her outstanding discovery responses.

In response Mr. Bradford apologized and asked Plaintiff how he should respond to Ms. Urban regarding the scheduled deposition. *Id*. He explained that because Plaintiff had "listed

Ruidoso, NM as [her] address, it has always been my understanding that this is where you are located." *Id.*

On the following day, May 12, 2009, Plaintiff sent Mr. Bradford an e-mail advising him she would be available for deposition on May 28, 2009 in El Paso at "11:00 a.m. or after the Noon Hour and BEFORE 5 p.m." *Id.* She directed him to reschedule the May 18 deposition that "you and Ms. Urban selected and scheduled without my consent whatsoever" and accused him of "failing to consult with your client, myself, to confirm what would work to accomplish the deposition in fullness." *Id.* Again, Plaintiff was silent on the outstanding discovery responses.

On May 13, 2009, Mr. Bradford advised Ms. Urban of Plaintiff's position regarding the May 18 deposition. *Id.* In response, Ms. Urban told Mr. Bradford that she had "no obligation to go to El Paso, and we will not be doing so." *Id.* She reminded him that Plaintiff's deposition had been "set for a couple of weeks, and Ms. Herstgaard needs to make herself available." *Id.* She advised counsel that if Plaintiff was not going to attend the deposition, then she had no choice but to move to compel her attendance or, alternatively, to seek dismissal since the case had "dragged on for two years with nothing done on Ms. Herstgaard's part to advance it." *Id.* Ms. Urban copied Plaintiff on this e-mail.

On that same day, Defendants filed their first motion to compel or, alternatively, to dismiss for failure to cooperate in the discovery process, Doc. 57, and Plaintiff's counsel, Mr. Bradford, moved to withdraw based on irreconcilable differences. Doc. 58.[3]

_____

[3]At some time between January, 2009, and May, 2009, Plaintiff once again changed her mailing address. *See* Docs. 50 & 58.

After receiving Plaintiff's response, the Court issued an order addressing only Defendants' motion. Doc. 60. The Court examined Defendant's offer of judgment and concluded there was "nothing in these papers that could be construed as permitting Plaintiff to cease all participation in discovery while she considers this offer. Plaintiff apparently misunderstands how this process works. She does not have the right to schedule her deposition at her absolute convenience." *Id*. The Court explained: "It is always preferable if the parties agree to a date and time for deposition, but is not **required** that they do. What is required is that a good faith effort be made in scheduling, but if depositions need to be scheduled because deadlines are running then reasonable notice of the deposition, typically ten days, is all that is required." *Id*. The Court concluded that Defendants had provided Plaintiff with reasonable notice of the deposition and that they were are entitled to rely on Mr. Bradford's representations on Plaintiff's behalf as to her availability, and that Plaintiff had failed to show good cause why she could not attend her deposition. *Id*. The Court stated:

> Even if Plaintiff wanted more time to consider the settlement offer, even if her attorney mis-spoke on her behalf, she has still not offered any reason why she could not attend her deposition on Monday [May 18] in a good faith effort to facilitate discovery and accommodate Defendants who have gone to great length and expense to accommodate her. Defendants were willing to travel to New Mexico to take Plaintiff's deposition. The law does not require this effort; in fact, the general rule is that a plaintiff must make herself available for deposition in the district where the action is pending. See 8A Fed. Practice & Procedure §2112. Plaintiff chose this forum when she filed this lawsuit and if she chooses to move after filing the action then she must bear the burden and expense of prosecuting an action long distance.

*Id*. The Court nevertheless denied the motion to compel based on the differences which had arisen between Plaintiff and Mr. Bradford, advising Plaintiff, however, that when her deposition was rescheduled, "**it shall be held here in the Northern District of Florida**." *Id*. The Court

denied the alternative motion to dismiss and directed Mr. Bradford to serve Plaintiff's discovery responses immediately if he had them in his possession. *Id.* Otherwise, the parties were directed to await further order of the Court. *Id.* The order was provided to Plaintiff by mail and e-mail, and Plaintiff was added as a notice party at that time.

Shortly thereafter, the Court granted Mr. Bradford's motion to withdraw and set a July 1, 2009, deadline for new counsel for Plaintiff to file a Notice of Appearance or for Plaintiff unequivocally to advise the Court of her intention to proceed with this matter *pro so.* Doc. 64. It cautioned Plaintiff that "**absent exigent circumstances, this deadline shall not be extended**." *Id.* (emphasis in original). The Court also extended the deadlines for discovery and for filing dispositive motions for 30 days from the date that Plaintiff's new attorney entered a notice of appearance or Plaintiff indicated her intention to proceed *pro se*. *Id.* The Court cautioned the parties that "**absent exigent circumstances, these deadlines shall not be extended**." *Id.* (emphasis in original). Based on documents submitted to the Court in connection with Defendant's motion to compel which indicated that the parties were only $1,000.00 apart in settling this matter, the Court encouraged them to explore settlement again and offered to consider holding a settlement conference without the parties' personal attendance if they were "serious about resolving this case." *Id.*

On June 25, 2009, Plaintiff filed a motion for settlement conference. Doc. 67. She did not, however, advise the Court of the status of her representation, and on July 2, 2009, Defendants moved again to dismiss or, alternatively, to compel discovery. Doc. 68.

The Court denied the motion to dismiss, Plaintiff having explained and cured the notice deficiency, but granted the alternative motion to compel and directed Plaintiff to attend her

deposition which had been timely noticed by Defendants on July 2, 2009, for July 16, 2009, in

Gainesville, Florida.  Doc. 72.  It also directed her to serve her outstanding discovery responses

no later than 12:00 p.m., EST, July 15, 2009.  *Id*.  The Court cautioned Plaintiff that "**failure to**

**attend her deposition as scheduled or to provide Defendants with the outstanding discovery**

**responses by the date and time stated in this Order shall result in a recommendation of**

**dismissal pursuant to Fed. R. Civ. P. 41(b) for failure to obey an order of this Court and to**

**prosecute this action without further notice to Plaintiff**."  *Id*. (emphasis in original).  It held

the motion for settlement conference in abeyance pending the outcome of Plaintiff's deposition.

*Id*.  The Court then took unique steps to ensure that Plaintiff received timely notice of this order.

*See* Doc. 77.

    The next series of events is set forth in the Court's July 20, 2009, order, after Plaintiff

once again failed to attend her deposition and requested an extension of the deadlines.  Doc. 77.

On that occasion, Plaintiff waited until the afternoon of the day before her deposition to advise

of her non-attendance.  In short, the Court found that Plaintiff had again not shown good cause

for her failure to participate in discovery in good faith.  *Id*.  Because of the timing, the Court

could not compel Plaintiff to attend the deposition, as it had already passed, but the Court

ordered her to serve her outstanding discovery responses no later than Monday, August 3, 2009,

at 5:00 p.m. EST.  *Id*.  The Court cautioned that it would not extend this deadline further under

any circumstances.  *Id*.  It also reset the discovery and dispositive motion deadlines and denied

the motion for settlement conference.  *Id*.  The Court explicitly instructed the Clerk to deliver the

order to Plaintiff both by mail and e-mail and to document compliance with the Court's

instructions.  *Id*.

On the same day that the Court issued this order, Defendants moved again to dismiss pursuant to Fed. R. Civ. P. 41(b) and 37(b) based on Plaintiff's failure to prosecute this action and to participate in discovery, a motion which is presently before the Court for consideration. Doc. 79.  In Defendants' view, Plaintiff's repeated refusal to proceed with discovery or to comply with the Court's orders signals that a "less drastic remedy [than dismissal] would be ineffective."  *Id.*  The Court ordered Plaintiff to file a response to the motion no later than August 10, 2009, at 5:00 p.m. EST, advising her that it would not extend this deadline for any reason.  Doc. 82.

Approximately a week later, on July 30, 2009, Defendants noticed Plaintiff's deposition for August 24, 2009, in Gainesville, Florida.  Doc. 93, Ex. G.  On August 1, 2009, Plaintiff faxed her discovery responses to Defendants.  *Id.* at Ex. F.  On August 2, 2009, Plaintiff sent Ms. Urban an e-mail requesting that her deposition be scheduled for October 15, 2009, or later, as she would "be available to be in Gainesville, Florida, on October 15, 2009, or any time thereafter with the exception of the Thanksgiving and Christmas Holiday."  *Id.* at Ex. H.  She explained that she did "not have any way to get to Florida or anyone to stay with until the date I am giving you" and that because she is a "senior citizen on social security," "extra funds are not at my disposal as I would like them to be."  *Id.*

On August 5, 2009, Ms. Urban sent Plaintiff a letter asking for a date that Plaintiff would provide "the responsive documents you refer to in your answers [to discovery] that are in your possession" and offering to prepay the copying costs.  Doc. 88.  Ms. Urban also requested that Plaintiff confirm that she would appear for her upcoming deposition in Gainesville.  *Id.*

Plaintiff timely responded to Defendant's motion to dismiss, but, despite the fact that the Court had told her it would not extend the deadlines, she simultaneously filed a motion for an extension of time so that she could secure counsel.  Doc. 88.  According to Plaintiff, she had contacted an attorney who was "interested in reviewing the documents," *id*., but she did not provide the name of the attorney or indicate that she had in fact provided the attorney with the requested documents.  The Court denied the motion on August 20, 2009.  Doc. 91.  On that same day, Ms. Urban sent Plaintiff a letter followed by an e-mail seeking to confirm Plaintiff's attendance at the deposition and asking that she provide the documents referenced in her discovery responses no later than the following day.  Doc. 93, Ex. I.  Plaintiff did not appear for her August 24 deposition.  *Id*. at Ex. K.  Two hours after the deposition was scheduled to begin, Plaintiff left a voice mail for Ms. Urban, advising her that she was "unable to make it to my deposition today because I'm still without funds to travel."  *Id*. at Ex. J.  Ms. Urban then sent Plaintiff an e-mail:

> You did not respond to my correspondence of last week asking that you let us know your intentions regarding your deposition and discovery responses prior to the close of business on Friday, August 21.  As you know, today was the last day in the discovery period, and the Court has refused to extend the discovery period any further.  We have not been able to conduct your deposition and you have failed to provide complete discovery responses, necessitating [Defendants'] move to renew its motion to dismiss, which we will be filing as soon as we receive the transcript from your scheduled deposition today.

Doc. 98, Ex. B.  Ms. Urban closed with a reminder that Plaintiff could call her if she had any questions or "wish[ed] to discuss any of this."  *Id*.

Subsequently, Defendants filed an amended motion to dismiss pursuant to Fed. R. Civ. P. 37(a) & (d) & 41(b).  Doc. 93.

The Court directed Plaintiff to file a response to the amended motion, setting September 23, 2009, as the response deadline. Doc. 94. Pursuant to the Court's directions, the Clerk e-mailed the order to Plaintiff and also mailed it via priority mail. Doc. 95. The priority mail package was later returned to the Court as "unclaimed." Doc. 100. On the day the response was due, Plaintiff moved for an extension of time, claiming she had just received the amended motion from Defendant via e-fax. Doc. 97. She argued that because her vision was now "failing her," she needed "time and visual assistance" to respond. Doc. 97. Defendants opposed the extension of time and attached documents verifying that they had timely served the amended motion on Plaintiff at her last known address in Ruidoso, New Mexico, and that they had put her on notice of their intentions to file an amended motion to dismiss. Doc. 98.

Out of an abundance of caution, the Court granted Plaintiff an extension of time to file her response. Doc. 102. The Court set October 14, 2009, as the deadline and advised Plaintiff that she could not file her response by fax and that she would not be granted further additional time for any reasons. *Id.* The order was e-mailed and mailed by priority service to Plaintiff. Doc. 104. The order was subsequently returned by the post office as "unclaimed." Doc. 107.

Plaintiff timely filed her response to the amended motion to dismiss. Doc. 105. Despite the fact that Mr. Bradford represented her for only three months, Plaintiff places all of the discovery failures on him, including his failure to provide her with a scheduling order which was issued four months before he was hired. *Id.*; *see* Doc. 45. She claims that Mr. Bradford did not timely advise her of the May, 2009, deposition, and did not send her copies of Ms. Urban's correspondence or respond to her "constant voicemails." Doc. 105. She also maintains that she did not demand to be deposed in Ruidoso, New Mexico, and was not even living there in May,

2009, even though she continued to use Ruidoso as her mailing address. *Id.* Though Plaintiff

disputes receiving Defendants' discovery requests in April, 2009, she does not claim that she did

not receive them before the original May deadline. *Id.* She argues that she timely informed Mr.

Bradford that she was not available for the May 18 deposition and that he was at fault for not

passing that information on to Defendants. *Id.* Plaintiff further takes issue with Defendants'

representations regarding the time their counsel spent traveling to the failed July, 2009,

deposition and claims she did not receive the Court's July 20, 2009, order by e-mail, though she

timely served her discovery responses on Defendants pursuant to the deadline in that order. *Id.*

She places some of the blame on her alleged failure to receive communications from the Court

on the weather. *Id.* She argues that her discovery responses were modeled on Defendants'

responses to her discovery requests[4] and complains that she has yet to receive information,

addresses, or phone numbers so that Defendants can be deposed. *Id.* She has not, however,

moved to compel more complete responses, and there is no indication that she otherwise ever

brought these alleged issues to Ms. Urban's attention. She argues that she timely sought to

arrange a substitute date for her August 24 deposition, and that by August 24, her eyesight began

"to rapidly deteriorate," and that when her eyes were checked on September 29, 2009, the doctor

discovered that she has cataracts which require surgery. *Id.* She continues to claim that she does

not have extra money to travel and that she contacted Ms. Urban's office on "numerous

occasions" but experienced "many excuses and stall tactics," such as being placed on hold

---

[4]Apparently, Mr. Bradford served discovery requests on Defendants before he withdrew
from further representation of Plaintiff. *See* Doc. 59.

before being disconnected. Throughout her response, Plaintiff maintains that she has not willfully failed to obey the Court's orders.

## DISCUSSION

As noted, Defendants seek dismissal pursuant to Fed. R. Civ. P. 37(a), (b), & (d) and 41(b). Rule 37(b) and (d) permit the award of sanctions where a party fails to obey the discovery orders of the Court or fails to attend her properly noticed deposition. Among the allowable sanctions are the following: prohibiting the disobedient part from supporting or opposing certain claims or defenses or from introducing designated matters into evidence; striking pleadings in whole or in part; staying the proceedings until the discovery order is obeyed; dismissing the action in whole or in part; and issuing any "further just orders." Fed. R. Civ. P. 37(b)(2)(A) & (d)(3). "Instead of or in addition to" those sanctions, the Court must order the payment of reasonable expenses, including attorney's fees, "caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(C) & (d)(3).

Though Rule 37 confers broad discretion on the Court to "fashion appropriate sanctions for the violation of discovery orders," *United States v. Certain Real Property Located at Route 1, Bryant, Alabama*, 126 F.3d 1314, 1317 (11th Cir. 1997), this discretion is not unfettered, and dismissal is a sanction of "'last resort–ordered only if noncompliance [with discovery orders] is due to willful or bad faith disregard for those orders.'" *Id*. (citation omitted). Although dismissal with prejudice is disfavored, it may be appropriate "when plaintiff's recalcitrance is due to willfulness, bad faith, or fault," *Phipps v.Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993), and is an available sanction "not merely to penalize those whose conduct may be deemed to warrant

such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639, 643 (1976). A litigant's *pro se* status does not excuse her noncompliance with the rules of discovery, as "*pro se* litigants are obligated to obey discovery orders." *Morton v. Harris*, 628 F.2d 438, 440 (5th Cir. 1980).

Rule 41(b) also provides for dismissal of an action when the plaintiff "fails to prosecute or to comply with these rules or a court order..." Fed. R. Civ. P. 41(b). To warrant dismissal of an action pursuant to Rule 41(b) as a sanction for a plaintiff's failure to comply with a court's rules or orders, the Court must examine two factors: (1) is there a clear record of willful conduct, and (2) would lesser sanctions than dismissal be inadequate? *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). Dismissal with prejudice is considered a sanction of last resort, applicable only in extreme circumstances. *Id*. "Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct." *Id*. Though the Court "must consider the possibility of alternative, lesser sanctions" than dismissal with prejudice, "such consideration need not be explicit." *Id*. at 484.

Besides Rules 37 and 41, the Court has "the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation." *Id*. at 483. To unlock the Court's inherent power, it must make a finding of bad faith. *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1306 (11th Cir. 2009). "A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order." *Id*.

Plaintiff's discovery failures in this case are quite basic--her refusal to attend her properly noticed depositions and her failure to respond fully to Defendants' discovery requests. She has now evaded three deposition notices, one of which was set in the town which Plaintiff led both Defendants and this Court to believe was her place of residence. However, even setting aside the first failed deposition attempt, which the Court will, for the sake of argument only, attribute to Mr. Bradford's alleged failure to confer with Plaintiff, the fact still remains that Plaintiff has, since then, failed to attend two depositions set in Gainesville, Florida.

As to the July, 2009, deposition, Plaintiff waited until the afternoon before the deposition was to occur to advise the Court that she would not appear. Her late filing prevented Defendants from moving to compel her attendance, as it had previously done, and caused them unnecessary travel and legal expenses. Though Defendants had given Plaintiff two weeks notice of the deposition–they must only give ten days notice--and though the Court itself had given her six weeks notice that Defendants would not be required to accommodate her regarding the deposition site when they re-noticed the deposition, she made no arrangements to make herself available (though she certainly had enough time to secure a bus ticket to Gainesville) or to alert Defendants in a timely manner that she had no plans to appear for deposition. As the Court previously explained to Plaintiff, the prosecution of this action lies solely with her. This is her case, and she must fund its prosecution, which includes making herself available for a deposition in this district if Defendants so choose. If she cannot afford to participate in discovery, then how will she afford to attend the trial of this case?

On this third occasion, Plaintiff simply did not appear for her deposition. Defendants noticed the deposition in plenty of time for Plaintiff to travel to Gainesville (three weeks) and

repeatedly asked her to confirm her attendance. To Plaintiff's credit, she did advise Defendants

shortly after the notice of deposition was issued that she could not be in Gainesville before

October due to her financial situation. However, as noted, Defendants were not obliged to

accommodate Plaintiff's request that the deposition be postponed, especially when the Court had

given clear signals that it wanted this case to move towards resolution either before or shortly

after its three-year anniversary. Her failure to appear therefore caused Defendants the

unnecessary expenditure of time and money, and as far as the Court can tell, Plaintiff has still not

produced the most basic of discovery, i.e., her answers to their questions about what happened

during her employment with Defendants to lead to the filing of this lawsuit and how she intends

to prove they acted in violation of the law when they terminated her employment.

The Court recognizes that the age of this case cannot be squarely placed on Plaintiff,

however. Some of the delay is attributable to the Court, for example, the delay between the

receipt of the copies of the complaint and the order directing service and the time during which

Defendants' first motion to dismiss was pending review by the undersigned and consideration by

the district judge. Other delays arose because of the parties' unsuccessful settlement attempts.

However, some of the delay is Plaintiff's fault and no one else's, and even when she has

responded to Defendants' discovery requests, she has done so in a manner which is vague and

burdensome on Defendants to secure.[5] Quite frankly, the Court cannot continue discovery in this

---

[5]For example, she has not produced copies of any of the documents she claims are in her possession, even though Defendants have offered to prepay the costs associated with copying them, and her interrogatory answers then refer back to these very same unproduced documents.

case *ad infinitum*, as there must come a point of conclusion, regardless of any physical or financial problems Plaintiff may have.

It is indisputably unfair to Defendants to put them to the task of repeatedly seeking to secure from Plaintiff basic discovery. However, while the Court finds Defendants' suggestions of dismissal to be compelling, it does not believe that dismissal is the appropriate course at this time. The Court is concerned that it has not sufficiently put Plaintiff on notice that this action can in fact be dismissed for failure to participate in discovery and to obey the orders of this Court. While the Court recognizes that the Eleventh Circuit does not always require such warning, it believes that lesser sanctions were available that would have served the ends of justice better and were more prudent and certainly less draconian than dismissal. Such sanctions might have included, for example, (1) a monetary sanction payable to Defendants for failing to appear for the last deposition without notice, (2) the payment of Defendants' attorney's fees for the missed depositions and for the preparation of the instant motions to dismiss, and (3) the striking of any witnesses who would have appeared on Plaintiff's behalf, either at the summary judgment or trial stages of this case. Defendants have not, however, asked for the imposition of any lesser sanction, and thus, the Court will not order one.

With this said, however, the Court intends for this R&R to serve as Plaintiff's final warning before the ultimate sanction of dismissal is imposed. While a lesser sanction than dismissal might have deterred further disobedience of the Court's orders and refusals to participate in discovery at some point earlier in this litigation, a lesser sanction after the issuance of this R&R will not serve any purpose. The Court has meticulously outlined Plaintiff's conduct in this litigation, and while it intends, if the district judge adopts the Court's recommendations,

to extend the discovery deadlines, it will have no further patience with any other failures or refusals on Plaintiff's part. Plaintiff has stated that she is available to be deposed in Gainesville any time after October, excluding the Thanksgiving and Christmas holidays. The Court will take Plaintiff at her word, but it will not hesitate to dismiss this action with prejudice pursuant to Rule 41(b) or the Court's inherent powers if Defendants advise the Court that Plaintiff has either failed again to attend her properly noticed deposition or to provide Defendants with the outstanding discovery responses. Similar future actions and inactions on Plaintiff's part will be seen as acts of bad faith and willfulness.

The Court will therefore recommend that the motion and amended motion to dismiss be denied and that this cause be remanded to the undersigned for further proceedings, which will include a short extension of the discovery and dispositive motion deadlines. Plaintiff is on notice of the Court's intentions and concerns and she should begin preparing at once to meet her discovery obligations in this case.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss and amended motion to dismiss, Docs. 79 & 93, be **DENIED**, and that this cause be **REMANDED** to the undersigned for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this _19th_ day of November, 2009.


_s/ A.  KORNBLUM_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.